```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
CREATIVE WASTE MANAGEMENT, INC.,        :

                     Plaintiff,         :
                                            04 Civ. 9581 (WCC)
          - against -                   :

CAPITOL ENVIRONMENTAL SERVICES, INC.,   :
CODE ENVIRONMENTAL SERVICES, INC. and
CITY OF NEW ROCHELLE, NEW YORK,         :

                     Defendants.        :
- - - - - - - - - - - - - - - - - - - - X        OPINION
CITY OF NEW ROCHELLE,                   :        AND ORDER

                     Plaintiff,         :     [Consolidated:
                                                05 Civ. 0932 (WCC)]
          - against -                   :

FIDELITY AND GUARANTY INSURANCE COMPANY :
and UNITED STATES FIDELITY AND GUARANTY
COMPANY,                                :

                     Defendants.        :
- - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

DOLCHIN, SLOTKIN & TODD, P.C.
**Attorneys for Plaintiff**
  **Creative Waste Management, Inc.**
One Commerce Square
2005 Market Street, 24th Floor
Philadelphia, Pennsylvania 19103

JOEL W. TODD, ESQ.

          Of Counsel

WILSON, ELSER, MOSKOWITZ, EDELMAN
  & DICKER, LLP
**Attorneys for Defendant**
  **City of New Rochelle**
Three Gannett Drive
White Plains, New York 10604

PETER A. MEISELS, ESQ.
LALIT K. LOOMBA, ESQ.

          Of Counsel

**Copies Mailed to Counsel of Record_____**

**CONNER, Senior D.J.:**

Creative Waste Management, Inc. ("Creative") brought this action against Capitol Environmental Services, Inc. ("Capitol"), Code Environmental Services, Inc. ("Code") and the City of New Rochelle (the "City") in connection with the 2003 dredging project of the New Rochelle Municipal Marina (the "Marina"). The City commenced a related action for breach of contract against Fidelity and Guaranty Insurance Company and United States Fidelity and Guaranty Company (collectively, the "Surety"), which was consolidated before this Court. Prior to trial, all claims by and against Capitol were settled, and we granted summary judgment in favor of Code and against Creative in the amount of $21,024.64 pursuant to an Opinion and Order dated November 2, 2006. *See Creative Waste Mgmt., Inc. v. Capitol Envtl. Serv., Inc.*, 458 F. Supp. 2d 178 (S.D.N.Y. 2006). The remaining claims were tried to a jury. After a two-week trial, the jury found that the City was liable to Creative for negligent misrepresentation in the amount of $61,279.40, and that Creative and the Surety were jointly and severally liable to the City for breach of contract in the amount of $348,802.00. Creative and the Surety now move for a new trial pursuant to FED. R. CIV. P. 59(a) or, in the alternative, to amend the judgment pursuant to FED. R. CIV. P. 59(e). In addition, the City moves to amend the judgment pursuant to FED. R. CIV. P. 59(e) and for a directed verdict pursuant to FED. R. CIV. P. 50(b). For the following reasons, the parties' motions are denied.

## BACKGROUND

The facts of this case are set forth extensively in our previous opinions, familiarity with which is presumed. *See Creative Waste Mgmt., Inc. v. Capitol Envtl. Serv., Inc.*, 429 F. Supp. 2d 582, *supplemented by* 458 F. Supp. 2d 178 (S.D.N.Y. 2006). Accordingly, we recite only the facts

1

relevant to our resolution of the present issues.

Creative entered into a municipal marina dredging project (the "project") with the City as general contractor on August 28, 2003 and agreed to dredge sediment from the floor of the Long Island Sound in the area in and around the Marina. It alleged that the City failed to disclose the existence of a bubbler system on and below the surface of the Marina that was designed to prevent ice from forming in the Marina during the winter months. The bubbler system was installed in the late 1960s, but had not been operational for more than twenty-five years. Creative asserted that the bubbler system prevented it from completing the dredging on time, because it clogged the auger head and pumping system that it used to dredge the Marina.

At trial, Creative attempted to prove three claims against the City. Specifically, it attempted to show that: (1) the City fraudulently induced it to enter into the contract to dredge the Marina and to transport and dispose of the dredged material by deliberately concealing the existence of the bubbler system, which made the project much more expensive and caused Creative to suffer substantial economic loss in attempting to complete the project; (2) even if the City did not deliberately conceal the existence of the bubbler system, it was negligent in failing to inform Creative of its existence and this negligence was a proximate cause of its economic loss; and (3) the City breached the implied covenant of good faith and fair dealing of the dredging contract (the "contract") by failing to modify the contract's terms when Creative experienced delays and faced extra costs occasioned by the presence of the bubbler system.

The City contended that Creative itself was at least partially, if not fully, responsible for its economic loss because it was negligent in failing to properly inspect the Marina before making its bid on the project, as a reasonable inspection of the site would have revealed the bubbler system.

2

The City also asserted a counterclaim against Creative for breach of contract, claiming that Creative failed to fulfill its contractual obligation to complete the project by removing and disposing of 17,000 cubic yards of sediment by January 31, 2004.  It sought to recover liquidated damages pursuant to § 1.8 of the contract, which provided that Creative would pay $5.00 per cubic yard for the portion of the 17,000 cubic yards not removed and disposed of by that date.  Creative contended, however, that it was excused from its obligations to complete the contract because the City either deliberately or negligently failed to inform it of the existence of the bubbler system, which made it impracticable, if not impossible, to complete the project within the allotted time.

The City also asserted a claim against the Surety for damages based on its alleged default on the performance bond that they issued to the City on behalf of Creative, guaranteeing completion of the project.  The City sought to recover from the Surety the reasonable cost of completing the project.  In its defense, the Surety contends that the City's deliberate or negligent failure to inform Creative of the existence of the bubbler system made it impracticable, if not impossible, to complete the project within the allotted time and rendered the contract and the bond unenforceable.

At the conclusion of the trial, the Court instructed the jury at length and provided each juror a questionnaire with eleven questions.  The jury found that the City negligently failed to disclose to Creative the existence of the bubbler system and that Creative consequently suffered a total economic loss of $468,596, only fifteen percent of which was proximately caused by the City.  The jury further offset its award by $9,010 for damage to the pilings of the Marina caused by Creative during its dredging, resulting in a net verdict of $61,279.40 in favor of Creative. Additionally, the jury found that the City's failure to disclose the existence of the bubbler system was *not* a direct and proximate cause of Creative's failure to complete the contract and thus awarded the City damages

for Creative's failure to finish the project. Specifically, the jury found the Surety and Creative to be jointly and severally liable for $48,802 in liquidated damages pursuant to § 1.8 of the contract, as well as $300,000 representing the reasonable cost of completing the project, for a total award of $348,802. We entered judgment in accordance with the jury's verdict, and the parties subsequently filed the present motions.

## DISCUSSION

### I.     Creative and the Surety's Motion for a New Trial

#### A.     Legal Standard

We will first address Creative and the Surety's motion for a new trial pursuant to FED. R. CIV. P. 59(a). A motion for a new trial may be granted only if the district court "determines that, in its independent judgment, 'the jury has reached a seriously erroneous result or [its] verdict is a miscarriage of justice.'" *Nimely v. City of New York*, 414 F.3d 381, 392 (2d Cir. 2005) (quoting *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (internal quotation marks omitted)) (citing *Manley v. Ambase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003)) (alterations in original); *PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, No. 99 CV 10199, 2006 WL 1881744, at *4 (S.D.N.Y. July 7, 2006). Creative offers three grounds in support of its request for a new trial: it contends that: (1) the Court erred by instructing the jury that it could allocate responsibility for Creative's losses to Code, which we absolved of liability on summary judgment; (2) the Court erred by allowing Vincent Love, the City's expert, to testify regarding Creative's specific economic loss in connection with the project; and (3) the City knowingly made false and unduly prejudicial statements in its closing arguments.

B.    **Jury's Allocation of Responsibility to Code**

Creative argues that the Court erred by instructing the jury that it could allocate responsibility for Creative's losses to Code, in whose favor we granted summary judgment absolving it of all liability prior to trial.  Creative contends that "[t]his was error given that, as a matter of law, Code was already found by the [C]ourt to bear no legal responsibility for Creative's loss."  (*See* Creative Mem. Supp. Mot. at 2.) It is clear, however, that we never instructed the jury that it could allocate responsibility to Code, and Creative's suggestion to the contrary is baseless.  We only mentioned Code in our charge to advise the jury not to draw any inferences as to its absence from the trial, as the jury was certainly aware of its initial involvement in the litigation.

Counsel, however, takes issue with question six of the Jury Questionnaire, which reads:

Has the City proved by a preponderance of the credible evidence that Creative itself or someone other than the City was partly or wholly responsible for Creative's economic loss?

Clearly, any instruction or interrogatory that reflects the fact that the City may not be held liable for damages that it did not proximately cause is proper.  *See, e.g.*, *Revak v. SEC Realty Corp.*, 18 F.3d 81, 90 (2d Cir. 1994) ("Like any cause of action sounding in negligence, negligent misrepresentation requires a showing of proximate cause.").  We therefore properly instructed the jury that it may award "Creative only that portion of its damages that was proximately caused by the City" and not "those damages caused by itself or by third parties or through no one's fault."  (*See* Meisels Decl. Opp. Creative Mot., Ex. B (Tr. at 211).)

Furthermore, and more fundamentally, Creative's argument fails to appreciate that Code may have contributed to Creative's "economic loss," even though we previously held that it was not liable

5

to Creative as a matter of law.[1]  Finally, and certainly not of least importance, even assuming, *arguendo*, that we committed error, neither Creative nor the Surety objected to the jury charge or the Jury Questionnaire on any basis, much less on this ground, and it cannot raise this objection for the first time pursuant to Fed. R. Civ. P. 59(a).  *See Lavoie v. Pac. Press & Shear Co., a Div. of Canron Corp.*, 975 F.2d 48, 55 (2d Cir. 1992) ("Failure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection."); *Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 208 (S.D.N.Y. 2001) ("City Defendants never raised the issue . . . during any of the charging conferences, nor did they express any request for instructions on these issues. Accordingly, these matters are deemed waived."); *see also* Fed. R. Civ. P. 51.  Indeed, Creative's counsel stated that he had "no exceptions or objections" to the Court's proposed charges and that he "accept[ed] them the way they [were] . . . ."  (*See* Meisels Decl. Opp. Creative Mot., Ex. E (Tr. at 47).)

### C.    **Vincent Love's Testimony**

Second, Creative argues that a new trial relating to its damages is warranted because the Court erred by permitting the City's expert, Vincent Love, to testify regarding the specific amount of Creative's damages when his expert report merely criticized the report of Creative's expert, P. Dermot O'Neill, and did not offer an independent analysis and conclusion regarding Creative's damages.  Creative argues that it was severely prejudiced by Love's testimony, in which he opined

---

[1] We relied on a specific provision of their subcontract in dismissing Creative's breach of contract claim against Code, *see Creative Waste Mgmt.*, 458 F. Supp. 2d at 187-88, and our decision does not foreclose the possibility that Code directly and proximately caused Creative to incur economic loss in connection with the project.

that the City caused Creative to incur economic loss no greater than $115,000, far less than the $917,000 to which O'Neill testified. However, the City properly disclosed Love as a rebuttal expert witness to O'Neill pursuant to FED. R. CIV. P. 26(a)(2), and Love's testimony as to the amount of specific damages, although not explicitly noted in his report, was based solely on evidence admitted at trial. Far from a complicated, in-depth analysis, Love's testimony reflected a simple computation based on evidence already in the trial record. It was the jury's role to determine the reliability and weight of his testimony, and we were well within our discretion to allow the jury to consider it. *See F.D.I.C. v. Suna Assocs., Inc.*, 80 F.3d 681, 687-88 (2d Cir. 1996) ("[I]t is well-settled that '[a] district court has wide discretion in determining whether to permit evidence on rebuttal.'") (quoting *United States v. Tejada*, 956 F.2d 1256, 1266 (2d Cir.), *cert. denied*, 506 U.S. 841 (1992)).

### D.    The City's Closing Argument

Finally, Creative argues that certain statements in the City's closing argument were false and unduly prejudicial, warranting a new trial. Specifically, Alex Petroski, Creative's principal owner, testified that Creative and Petroski agreed to indemnify the Surety for any damages awarded against it in the litigation, which Creative's counsel recalled in his closing argument in an attempt to emphasize that Petroski would ultimately be responsible for a judgment against the Surety. In response, counsel for the City stated in his closing argument that Creative produced no evidence of the alleged indemnification agreement. Because Creative did not place in evidence any documents evidencing such indemnification agreement, the City's closing argument did little more than state an obvious truth. Calling attention to the fact that certain evidence is absent from the record does not warrant vacatur of a jury verdict, and no such relief will be granted here. Accordingly, Creative

7

and the Surety's motion pursuant to FED. R. CIV. P. 59(a) must be denied.

II.     **Creative and the Surety's Motion for an Amended Judgment**

   A.     **Legal Standard**

   In the alternative, Creative and the Surety moves pursuant to FED. R. CIV. P. 59(e) to amend the Judgment entered upon the jury's verdict.  "The Court has considerable discretion in deciding this motion, . . . however, reconsideration of an entered judgment is 'an extraordinary remedy which should be used sparingly[] . . . .'"  *Cunningham v. Town of Ellicott*, No. 04CV301, 2007 WL 1756502, at *5 (W.D.N.Y. June 18, 2007) (quoting 11 WRIGHT, MILLER & KANE, FED. PRAC. AND PROCEDURE: CIVIL § 2810.1 at 121 (2d ed. 1995)); *see also McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983).

> [T]here are classically four grounds on which a Rule 59(e) motion may be granted: 'First, the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based. Second, the motion may be granted so that the moving party may present newly discovered evidence or previously unavailable evidence. Third, the motion will be granted if necessary to prevent manifest injustice . . . .  Fourth, a Rule 59(e) motion may be justified by an intervening change in controlling law.'

*Schwartz v. Twin City Fire Ins. Co.*, No. 05 Civ. 7943, 2007 WL 1658681, at *12 (S.D.N.Y. May 31, 2007) (citing 11 WRIGHT, MILLER & KANE, *supra*, § 2810.1); *see also Munafo*, 381 F.3d at 105; *Cunningham*, 2007 WL 1756502, at *5.

   B.     **The Jury Found that Creative Breached Its Contract with the City**

   Creative first argues that the judgment against it in the amount of $348,802 for breach of contract is improper because the jury never found that Creative actually breached the contract.  This

argument is curious in light of the evidence adduced at trial.  The contract clearly obligated Creative to complete the project.  It was stipulated that Creative never completed the project, and the gravamen of Creative's entire case was that it was excused from completion because the City either deliberately or negligently failed to inform it of the existence of the bubbler system, which made it impracticable, if not impossible, to complete the project within the allotted time.  Thus, when the jury found that the City's failure to disclose the existence of the bubbler system was *not* a direct and proximate cause of Creative's failure to compete the project, it necessarily found that Creative was not excused from its obligation to do so.  Creative's *ex post facto* argument that it could have been excused from completing the contract for a variety of other reasons unrelated to the bubbler system, and thus its failure to finish the dredging was not necessarily a breach, is wholly unsupported by the record[2] and is simply not the case that Creative tried to the jury, as evidenced by its failure to object to the jury charge or questionnaire.[3]

### C.    The City's Damages Should Not Be Limited to $48,802

Creative argues in the alternative that, even if the jury found that Creative breached its

---

[2] Most notably, Creative alleges that "the lengthy negotiations between Creative and New Rochelle [after] the bubbler system was discovered" contributed to Creative's inability to complete the project.  (*See* Creative Mem. Supp. Mot. at 10.)  The jury found, however, that the City did not breach the contract's covenant of good faith and fair dealing by failing to make adjustments in the contract terms when delays or additional expenses were necessitated by the presence of the undisclosed bubbler system.

[3] We charged the jury that, although it is established that Creative did not complete the project, it must determine whether Creative has proved that the City's failure to disclose the existence of the bubbler system prevented it from completing the project within the allotted time. Creative not only failed to object, but repeatedly noted that the charge was eminently fair and, at one point, indicated that it was "an excellent summary of the claims." (*See* Meisels Decl. Opp. Creative Mot., Exs. E (Tr. at 47, 72), B (Tr. 230).)

contract with the City, the Judgment should be vacated insofar as it held Creative liable for damages

in excess of $48,802, the amount of liquidated damages specified in § 1.8 of the contract,[4] reasoning

that a valid and enforceable liquidated damages clause precludes recovery of actual damages.  The

City argues, however, that the provision for liquidated damages does not limit the amount of actual

damages it may recover for Creative's abandonment of the contract because the liquidated damages

clause only provides damages for Creative's delay in completing the contract.

Under New York law, it is well-established that "liquidated and actual damages are mutually

exclusive remedies" "where the contractual language and attendant circumstances show that the

contract provides for the full recovery of actual damages[] . . . ."  *U.S. Fid. & Guar. Co. v. Braspetro

Oil Servs. Co.*, 369 F.3d 34, 71 (2d Cir. 2004); *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d

383, 426 (S.D.N.Y. 2004) ("Ordinarily plaintiffs are awarded either actual damages or liquidated

damages, but not both when the predicate for the awards is the same.").  Implicit in this principle is

that the award of liquidated damages will not preclude the recovery of actual damages when the

former does not subsume the latter.  *See Wechsler*, 330 F. Supp. 2d at 426 (citing *J.E. Hathaway &

Co. v. United States*, 249 U.S. 460, 464 (1919) (Brandeis, J.)); *see also Town of N. Hempstead v. Sea

Crest Const. Corp.*, 119 A.D.2d 744, 746, 501 N.Y.S.2d 156, 158 (2d Dep't 1986) (allowing plaintiff

---

[4] Section 1.8 of the contract provided:

Time is of the essence.  The entire dredging/dewatering must be completed by the
expiration date of the Permit period to assure availability of the entire marina for the
2004 season.  Therefore, liquidated damages will be levied in amount of $5.00 per
cubic yard for the quantity of sediment not removed by the expiration date from any
portion of the marina as calculated by the pre dredge survey  and the finished grade
template.

(*See* Meisels Decl. Opp. Creative Mot., Ex. D.)

to collect both liquidated and actual damages when the liquidated damages clause in the construction contract did not "specifically limit the amount of actual damages that the plaintiff may recover upon [the defendant's] abandonment of the contract.").

Although it is clear that § 1.8 of the contract provides damages caused by Creative's delay in performance, and the jury's award of $300,000 represents the reasonable cost of completion, it is unclear whether the delay damages encompass in whole or in part the cost of completing the project.  The parties do not specifically address this issue, and neither Creative nor the Surety made any objection to the charge or Jury Questionnaire, despite the fact that the Jury Questionnaire and charge explicitly allowed the recovery of both liquidated damages for delay and actual damages for the reasonable cost to the City of completing the project.  *See Meron Tech. Distrib. Corp. v. Discreet Indus. Corp.*, 189 F. App'x 3, 4 (2d Cir. 2006) ("As to whether the jury awarded duplicative damages, defendants have waived any argument regarding the jury instruction or verdict sheet given their failure to raise this issue in their requests to charge or at the charging conference, or to lodge a timely objection, or to request that the court poll the jury.") (citing FED. R. CIV. P. 51; *Lavoie*, 975 F.2d at 54-55).  Accordingly, Creative and the Surety's motion to amend the Judgment on this basis must be denied.

### D.    The Award of $300,000 Should Not Be Vacated

Creative also moves to vacate the award of $300,000 representing the reasonable cost of completion, as it was unsupported by the weight of the evidence.  It is well established, however, that a motion pursuant to FED. R. CIV. P. 59 is an improper basis to set aside a jury verdict for evidentiary insufficiency.  *See, e.g.*, *Hegger v. Green*, 646 F.2d 22, 28 (2d Cir. 1981).  Even if we were to treat

11

this as a motion pursuant to FED. R. CIV. P. 50,[5] it must be denied because neither Creative nor the Surety made a motion at trial for a judgment as a matter of law.  *See Watson v. E.S. Sutton, Inc.*, No. 05-5388-cv, 2006 WL 3421809, at *1 (2d Cir. Nov. 27, 2006) (citing  FED. R. CIV. P. 50(b)); *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 200 (2d Cir. 2004).  In any event, we would deny the motion if we were to reach the merits.

> Specifically, Creative contends that:

> New Rochelle offered testimony on cost of completion only through the testimony of Mr. Pena.  Creative produced no such testimony.  Given that Mr. Pena was stipulated as a non-expert, and given that the information he relied upon was incomplete and factually flawed, there exists no credible evidence of record on which any determination may be based regarding the cost of completion of the dredging project.  Nothing demonstrates this more clearly than the jury's decision that the cost of completion was $300,000, as opposed to the approximately $920,000 sought by New Rochelle.  The fact that the jury came back with a verdict of $300,000 when New Rochelle sought more than three [] times that amount showed how the jury gave little credence to the insufficient and inadmissible testimony from Mr. Pena.

(*See* Creative Mem. Supp. Mot. at 14 (emphasis omitted).)  We disagree.  As the City explains,

> The uncontroverted evidence demonstrated that Creative's bid to complete the dredging, dewatering, transportation and disposal of 17,000 cubic yards of material was $2,000,000.  Creative conceded that only approximately . . . 66% of the job remained to be completed.  Sixty-six percent of $2,000,000 equals $1,320,000.  It was uncontroverted that the City retained $1,023,000 for completion of the project.  By simple arithmetic, $1,320,000 less $1,023,000 equals $297,000.  In addition, there was evidence that there would be some additional expense to remove the bubbler system.

(*See* the City Mem. Opp. Creative Mot. at 12 (internal citations omitted).)  This evidence is sufficient to sustain the award of $300,000.  *See Caruolo v. John Crane, Inc.*, 226 F.3d 46, 51 (2d Cir. 2000) ("[J]udgment as a matter of law should be granted only if[] . . . there is such a complete absence of

---

[5] FED. R. CIV. P. 50 provides that a court may direct judgment as a matter of law in contravention of a jury's verdict if the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. *See* FED. R. CIV. P. 50(a)-(b).

12

evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture[] . . . .") (internal quotation marks omitted); *see also Black v. Finantra Capital, Inc.*, 418 F.3d 203, 209 (2d Cir. 2005) ("A court evaluating such a [Rule 50] motion cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury.") (internal quotation marks omitted).

After considering all of Creative's arguments underlying its motion pursuant to FED. R. CIV. P. 59(e), we conclude that Creative's motion must be denied. For the same reasons, the Surety's motion is also denied, as its position is aligned with that of Creative. (*See* Creative Mem. Supp. Mot. at 15-16.)

### III.   <u>The City's Motion To Amend the Judgment</u>

The City moves to amend the judgment pursuant to FED. R. CIV. P. 59(e) because it contends that the jury awarded Creative lost profits for negligent misrepresentation, a claim for which a party may recover only out-of-pocket losses. The City reasons that the jury found it liable solely for negligent misrepresentation, yet determined that Creative incurred a total economic loss in the amount of $468,596 of which the jury found Creative liable for fifteen percent, even though Creative conceded that its total out-of-pocket loss was $244,234.32. The City argues that the final award of $70,289.40 necessarily includes lost profits and is therefore improper under New York law. We disagree.

We instructed the jury at length that it could award lost profits only if it found the City liable for breach of the covenant of good faith and fair dealing, and that only out-of-pocket losses were recoverable on a claim for negligent misrepresentation. Although the jury, in computing the

13

damages award for negligent misrepresentation, took fifteen percent of Creative's *total* economic loss, which appears to include Creative's claimed lost profits, the final award of $70,289.40 is not at all inconsistent with the out-of-pocket rule, as it is far less than the amount of out-of-pocket losses to which Creative was evidently entitled.   Indeed, it is likely that the jury allocated such a low percentage of fault to the City because it realized that the phrase "total economic loss" included lost profits, which it understood that it could not award to Creative for negligent misrepresentation.  *See United States v. Salameh*, 152 F.3d 88, 116 (2d Cir. 1998) ("'[J]uries are presumed to follow their instructions.'") (quoting *Zafiro v. United States*, 506 U.S. 534 , 540 (1993)).   In any event, the City failed to object to the Jury Questionnaire in this regard and has therefore waived its right to an amendment of the Judgment on this ground.  *See, e.g.*, *Meron Tech. Distrib.*, 189 F. App'x at 4.


IV.    **The City's Motion for a Directed Verdict**

Finally, the City moves for a directed verdict pursuant to FED. R. CIV. P. 50(b) on its counterclaim against Creative and on its consolidated claim against the Surety for liquidated damages pursuant to § C(IV)(s) of the contract.  (*See* Meisels Decl. Supp. City Mot., Ex. H.)  Section C(IV)(s) provides that Creative must pay the City $100 per day for each day Creative is in default of the contract.   (*See id.*)  At the charge conference, the City requested that we instruct the jury to award liquidated damages pursuant to this clause if it found that Creative breached the contract.  We properly declined to do so because the City neither specifically alleged these damages in its counterclaim nor mentioned them or the applicable provision of the contract to the jury.  The Court itself did not learn of them until the charge conference.  Accordingly, the City's motion pursuant to FED. R. CIV. P. 50(b) for liquidated damages pursuant to § C(IV)(s) of the contract is denied.

## CONCLUSION

For the foregoing reasons, the motions filed by Creative Waste Management, Inc., Fidelity and Guaranty Insurance Company and United States Fidelity and Guaranty Company, and the City of New Rochelle are denied in their entirety.

SO ORDERED.
Dated:  White Plains, New York
   July 11, 2007

                  _William C. Conner_
                 Sr. United States District Judge

15